47  281
66  404
66  558

THOMAS DUNLAP *v.* JOHN ROGERS, PR. DEFENDANT, WHITE & FARNSWORTH, TRUSTEES, CONNER & STONE, ASSIGNEES, CLAIMANTS.

Law of domicil. Insolvency.

Where personal property is to be conveyed by will, or by a voluntary sale or assignment, the conveyance must be made and the instrument executed according to the requirements of the law of the owner's domicil. And so in cases of intestacy, the descent is according to the law of the owner's domicil.

But a prior assignment of personal property under the insolvent law of another State, by a citizen of such State, will not be permitted to prevail against a subsequent attachment, by a creditor residing in this State, of the insolvent's property found here.

THE writ in this case is dated Oct. 3, 1864, and was served on the trustees, October 3, 1864. At the time of the service of the writ the trustees were indebted to the principal defendant in the sum of eight hundred thirty-one dollars and sixty-seven cents, upon a note for that sum, dated on or about Sept. 19, 1864, payable in sixty days from its date. The trustees at date of note were residents of New Hampshire, and still are. Said note was made in Boston, Massachusetts, but no place of payment was specified in note.

The claimants claim that they are the assignees, under the insolvent laws of Massachusetts, of the said John Rogers, doing business under the firm of J. Rogers & Co. On the 29th day of September, 1864, said John Rogers, as an inhabitant of Massachusetts, and being insolvent, filed his voluntary petition to be decreed an insolvent debtor, and on the same day, a warrant was issued by the court of probate and insolvency for the county of Suffolk, requiring the messenger of said court to take possession of the property and estate of said John Rogers, and hold the same until the appointment of assignees. And said claimants were, on the eleventh day of October, 1864, appointed by said court assignees, and took upon themselves that trust, and proceeded in fulfilment thereof, and proceeded in accordance with the laws of Massachusetts in that behalf.

At the time of said petition and appointment, said note was in the safe of one Joseph C. Davis of Boston, for safe keeping, and did not actually pass into the hands of said claimants until after the service of said writ on said trustees in this suit.

The notice of these claimants to the trustees that they were such assignees, was given Nov. 22, 1864.

The plaintiff, who is a resident of New Hampshire, and was so when his debt accrued, had no notice whatever of the petition of said Rogers, the appointment of said assignees, nor of any of the proceedings in said case. Plaintiff's claim is for money due for goods consigned to defendant and by him sold.

The claimants claim that by their appointment as such assignees, the note in question became their property as assignees, and that they are entitled to the avails thereof in that capacity.

This case was submitted to the court upon the foregoing statement of facts, and the questions arising on the case were reserved.

*Morrison & Stanley*, for claimants.

The only question arising in this case is whether the trustees are chargeable. From the facts agreed it appears that the writ was served upon the trustees Oct. 3, 1864; that at that time they were indebted to the principal defendant upon a note made by them payable to Rogers; that the note was made in Massachusetts; that on the 29th of September, 1864, the principal defendant was an inhabitant of Massachusetts, and being insolvent on that day filed his petition to be decreed an insolvent, and on that day a warrant was duly issued to the sheriff to take possession of all his goods and estate, and hold the same until the appointment of assignees.

By section 44 of chap. 118, p. 586 of the General Statutes of Massachusetts, it is enacted "that the assignment shall vest in the assignee all the property of the debtor, real and personal, which he could have lawfully sold, assigned or conveyed, or which might have been taken upon execution against him at the time of the first publication of the notice of issuing the warrant, although the same is then attached on mesne process as the property of the debtor, and shall be effectual to

pass all said estate and, subject to the provisions of the following section, to dissolve any such attachment. The assignment shall vest in the assignee all debts due to the debtor or any person for his use, and all liens and securities therefor, and all his rights of action for goods or estate, real or personal, and all his rights of redeeming such goods or estate."

This note, then, under the laws of Massachusetts, by the assignment of Sept. 29, passed to the assignees, there being nothing in the case to show that the proceedings in insolvency have not been regular, and the assignment, being valid under the laws of that State, is valid and binding here. *Hoag* v. *Hunt & al.*, *& Tr.*, 21 N. H. 106 ; *Hall* v. *Boardman & Tr.*, 14 N. H. 38.

In *Hoag* v. *Hunt*, a case almost precisely like the one at bar, the court say whatever debt the trustee owed the defendants passed by the assignment to the assignees. This doctrine is recognized in Massachusetts in repeated decisions. 8 Gray 181 ; 11 Gray 37 ; 7 Allen 395. To the same effect is *Smith* v. *Brown*, 43 N. H. 44.

The case of *Dalton* v. *Currier*, relied on by the plaintiff, is not in point. In that case by the assignment it appears it was fraudulent. It was made for the sole purpose of defeating and delaying the creditors in New Hampshire and was not in conformity to the laws of Massachusetts.

The plaintiff assumes that the note in question was payable in this State, but the facts found in the case do not warrant such an assumption. The case finds that the note was made in Boston, and that the principal defendant was an inhabitant of Massachusetts. The note was clearly payable, in Massachusetts. Story on Prom. Notes, secs. 235 and 236.

This note, then, having been made and payable in Massachusetts, passed by the assignment to the claimants, and cannot now be reached by trustee process here, and the trustees should be discharged.

*S. N. Bell*, for plaintiff.

The settled doctrine here is that a prior assignment in bankruptcy will not transfer the property as against the creditor of the bankrupt, who is a citizen of the government where the property is situated, or the debt due. *Saunderson* v. *Bradford*, 10 N. H. 260 ; *Saunders* v. *Williams*, 5 N. H. 213.

A prior assignment in bankruptcy under a foreign law, will not be permitted to prevail against a subsequent attachment, by an American creditor, of the bankrupt's effects found here. And our courts will not subject our citizens to the inconvenience of seeking their dividends abroad when they have the means to satisfy them under their own control. 2 Kent's Com. 406–7 ; *Dalton* v. *Currier*, 40 N. H. 237.

In Connecticut it is held that law, justice and public policy, all combine to give a preference to their own attaching creditors. *Taylor* v. *Geary*, Kirby 313.

It is also held that the rule by which the funds of the defendant can be attached by trustee process, does not apply to the case of a debtor summoned as the trustee of the defendant for a negotiable promissory

note, for the reason that a *bona fide* purchaser must lose the amount, or the maker, without fault on his part, be compelled to pay it twice. *Stone* v. *Dean*, 5 N. H. 502. In that case of *Stone* v. *Dean* the notes disclosed were not in a position at the time of the service of the writ, nor afterwards, where they could be transferred, nor could the trustee be called on to pay them again, and the trustees were charged for the notes.

If, on disclosure, it appears that the trustee had not, at the time of the service of the process, any property of the principal defendant in his hands in this State, and was not chargeable on any debt or contract to be paid or performed in this State, he will be discharged, not for want of jurisdiction of the case, person and subject matter, but because the courts here hold that in such case the trustee is not chargeable, since their judgments could not affect property out of the State, and consequently the trustee could not be protected by it. *Lawrence* v. *Smith*, 45 N. H. 533.

In *Horn* v. *Thompson*, it is held, that where the trustee was owing a negotiable note given to the defendant he could not be charged, without the notice required by the statute had been given; but that where a party claiming an interest in a note should appear and confess the liability of the trustee, he might be held to have waived the statute notice, and consequently be bound by the judgment charging the trustee.

The cases, *Stone* v. *Dean*, 5 N. H. 502, *Horn* v. *Thompson*, 31 N. H. 562, *Kibling* v. *Burley*, 20 N. H. 359, and others, holding that a trustee cannot be charged on account of a negotiable promissory note, all depend on the reason assigned in *Stone* v. *Dean*, that the trustee might be liable to have to pay a second time, and the judgment would not be any protection to him.

The rule is one of public policy, and is not altered by the fact that a statute, since passed, admits of the trustee being charged under certain circumstances; where the reason of the rule fails, the rule itself fails.

Here the claimants come in and contest the liability of the trustee, and are bound by the judgment that may be rendered. *Libbey* v. *Hodgdon*, 9 N. H. 396. These notes have not been transferred *bona fide* and for a valuable consideration, so that the claimants hold them in no other way than the defendant held them, and they are to be treated as if they still remained in the hands of the defendant.

The giving of the note was not an extinguishment of the preceding debt. *Johnson* v. *Cleaves*, 15 N. H. 332; *Smith* v. *Smith*, 27 N. H. 244; *Coburn* v. *Odell*, 30 N. H. 540. And while the note remains in the hands of the defendant to whom the original debt was due, it will, where the court have jurisdiction of all the parties, and the purposes of justice require it, be treated as indebtedness on the original cause of action.

The court having jurisdiction of the cause, and of all the parties, and of the subject matter, the judgment will be binding, and the trustees protected by it against having to pay the debt a second time.

The trustees are chargeable, since without it the plaintiff in this State, although having no notice of the proceedings in Massachusetts, is barred from recovering his debt there in any event. Massachusetts Gen-

eral Statutes, ch. 118, sec. 78. As the courts have held, that they will not compel the plaintiff to seek his dividends elsewhere when they have the means to satisfy them under their own control, they cannot so hold the law that its effect will be to deprive the plaintiff of his only remedy, and give the avails of the funds secured by the plaintiff in this State, to creditors in a foreign State, where they have the jurisdiction of all the parties and the subject matter, and the judgment here made will be binding on all parties. *Dalton* v. *Currier,* 10 N. H. 237 ; *Saunders* v. *Williams,* 5 N. H. 213. The question is not as to the nature of the contract, but as to the remedy, and must be governed by the rule of proceeding here and not by that in Massachusetts.

Some of the decisions of the court would seem to hold that the trustee cannot be charged on a negotiable promissory note except under the limitations of the statute relating to trustees. *Kibling* v. *Burley,* 20 N. H. 359 ; *Horn* v. *Thompson, ante,* wherein it is said that before the passage of this act, it had been decided that the maker of a negotiable promissory note could not be charged as the trustee of the payee, and, consequently, independently of the statute, the power of the court did not extend to this case. This position, as stated, is too broad, and must be understood, with the limitation in *Stone* v. *Dean,* that it applies only to cases where the judgment would not protect the trustee, and such seems to have been the idea of the court, where subsequently, in the same opinion, it was said that where a party claiming an interest in the note should appear and contest the liability of the trustee, he waived the statute, and consequently would be bound by the judgment, charging the trustee.

In *Stone* v. *Dean,* which was before the statute requiring the defendant to come in, and providing that notice should be given to the claimants to appear, the effect of the decision was that the trustees were charged where the parties appeared so as to be bound by the judgment.

The claimants might have neglected to appear, when the trustees might, perhaps, have been discharged. If the trustee had not stated the facts relating to the claim of the assignees, and had been charged, that judgment would not have protected him against a suit by these claimants, for the reason that he was charged on his own default in not stating all the facts necessary to a correct decision. *Page* v. *Thompson,* 43 N. H. 373.

The trustees should be charged, even under the statute. Ch. 208, sec. 18–20. The makers of the note resided in this State, and the note was payable here. No place of payment was designated, and it is consequently payable here, at the maker's residence or place of business. The presentation for payment must be made here, as well as a demand for payment, if one were necessary. Chitty on Bills, 278 ; Story's Prom. Notes, sec. 235 ; Story on Bills, sec. 49 ; *Bank of Orange Co.* v. *Colby,* 12 N. H. 523.

No question, so far as appears, is made, as to the summoning in of the defendant or giving notice to any one having an interest to appear and maintain his claim, as, so far as these parties are concerned, that is waived by the appearance.

These claimants are bound by the proceedings in this State, in the same way the plaintiff would have been bound by the proceedings in Massachusetts, if he had gone there and presented his claim and taken his dividend.

SARGENT, J.  In *Le Chevalier, assignee of Dormer, a Bankrupt*, v. *Lynch & al.*, Doug. 162, it was said by *Lord Mansfield*, "that if a bankrupt has money owing to him out of England, as in St. Christophers, Gibralter, &c., the assignment under the bankrupt law so far vests the right to the money in the assignees that the debtor shall be answerable to them, and shall not turn them round by saying he is only accountable to the bankrupt.  In Scotland they permit assignees of a bankrupt in England to sue for money owing to the bankrupt in Scotland, and it has been determined at the cockpit, upon solemn consideration, that bills by English assignees may be maintained in the plantations upon demands due to the bankrupt's estate."

But he also held "that if, in the meantime, after the bankruptcy and before payment to the assignees, money owing to the bankrupt *out* of England is attached *bona fide*, by regular process, according to the law of the place, the assignee in such case cannot recover the debt."

So in *Potter* v. *Brown*, 5 East. 124–131, *Lord Ellenborough, C. J.*, says, "it is every day's experience to recognize the laws of foreign countries as binding upon personal property, as in the sale of ships, condemned as prize by the sentences of foreign courts, the succession to personal property by will or intestacy of the subjects of foreign countries.  We always import together with these persons the existing relations of foreigners as between themselves, according to the laws of their respective countries; except, indeed, where these laws clash with the rights of our own subjects here, and one or the other of the laws must necessarily give way, in which case our own is entitled to the preference.  This having been long settled in principle and laid up amongst our acknowledged rules of jurisprudence, it is needless to discuss it further."

The English cases subsequent to this have been somewhat conflicting. These decisions are reviewed and commented on by Story in his Conflict of Laws, secs. 404 to 409 inclusive.  His conclusion upon such review, is, that the courts of England maintain the doctrine of the universal operation of assignments in bankruptcy upon all movable property wherever it may be locally situated at the time of the assignment.  The process of reasoning by which this conclusion is reached is substantially as follows :  The general principle is that personal property has no locality, but as to its disposition, it is subject to the law which governs the person of the owner, that is to say, it is subject to the law of his domicil.  There can be no doubt that the owner may, by a voluntary assignment, or sale, made according to the law of his domicil, transfer the title to any person wherever the property may be locally situated.  Now an assignment under the bankrupt laws of his domicil is by operation of law a valid transfer of all the bankrupt's property as valid as if made personally by him.  The law, upon his bankruptcy, transfers his whole

property to the assignees, who thus become, *lege loci*, the lawful owners of it, and are entitled to administer it for the benefit of all his creditors. The mode of transfer is entirely immaterial. The only proper question is whether it is good according to the law of his domicil. This rule is applied in the succession to movable property in cases of intestacy, where the property passes by mere operation of law in the same manner as by a voluntary act of sale, or where it passes by will. *Chancellor Kent* came to the same conclusion, upon a review of the English and early American authorities, in the court of chancery in New York, in 1820, in case of *Holmes* v. *Remsen*, 4 Johns. Ch. 460–487, in which it was held that by the English law, and by the general international law of Europe, the proceeding which was prior in point of time, was prior in point of right, and attached to itself the right to take and distribute the estate.

But whatever weight the English or the early New York authorities might otherwise have been entitled to, the great weight of American authorities is now the other way, and it may now be considered as a part of the settled jurisprudence of this country, that personal property, *as against creditors*, has locality, and the *lex loci rei sitae* prevails over the law of the domicil, with regard to the rule of preferences in the case of insolvents' estates. The laws of other governments have no force beyond their territorial limits, and if permitted to operate in other States, it is upon a principle of comity, and only when neither the State nor its citizens would suffer any inconvenience from the application of the foreign law. A prior assignment in bankruptcy under a foreign law will not be permitted to prevail against a subsequent attachment, by an American creditor, of the bankrupt's effects found here, and our courts will not subject our citizens to the inconvenience of seeking their dividends abroad when they have the means to satisfy them under their own control. 2 Kent's Com. 406; Story's Conflict of Laws, secs. 410 to 421 inclusive : *Harrison* v. *Sterry*, 5 Cranch 289–302; *Ogden* v. *Saunders*, 12 Wheaton 61–362; *Saunders* v. *Williams*, 5 N. H. 213; *Sanderson* v. *Bradford*, 10 N. H. 260; *Blake* v. *Williams*, 6 Pick. 286. And the same rule applies as between the different State, *Ingraham* v. *Geyer*, 13 Mass. 146; *Fox* v. *Adams*, 5 Greenl. 245.

Upon the principle of comity or courtesy of nations and of States, it is usual everywhere to allow the assignees of the bankrupt, duly appointed pursuant to the laws where the bankrupt dwells, to maintain actions in that character in another State. And it has generally been held, where questions arose in this country between the bankrupt under a foreign law and his assignees under the same law, they both being citizens and subjects of the country enacting the law, where no rights of creditors, citizens of this country, intervened, that effect should be given here to the foreign law. *Plestero* v. *Abraham*, 1 Paige 236; *Abraham* v. *Plestero*, 3 Wend. 540; *Hall* v. *Boardman*, 14 N. H. 38; *Hoag* v. *Hunt*, 21 N. H. 106; *Smith* v. *Brown*, 43 N. H. 44.

It is said by *Yeates, J.*, in *Milne* v. *Moreton*, 6 Bin. 353, that "it is one thing to assert that assignees of bankrupts under foreign institutions should be allowed by the courtesy of nations to support suits, as-

representatives of such bankrupts for debts due to them, and it is another thing to give efficacy to those institutions to cut out attaching creditors although posterior in point of time, who have commenced their proceedings under the known laws of the government to which they owe allegiance, and from which they are entitled to protection. The right of such assignees thus to sue in a foreign country does not result from the force or effect of the law, but from long used and well established comity."

In *Hall* v. *Boardman*, *supra*, it was said that the assignment in Massachusetts, if regular, was sufficient to pass the property in the hands of the trustee in this State to the assignees in Massachusetts, so that the debt due from the trustee in this State to the bankrupt in Massachusetts would be due and payable to the assignees of the bankrupt there, unless the creditor here had acquired some right under our law paramount to such right in the assignees; and it was held in that case that inasmuch as the debt sued here, was one upon which the statute of Massachusetts would act directly, and that a discharge of the bankrupt in Massachusetts would discharge the plaintiff's debt, therefore an attachment here upon such a debt would not give the plaintiff any rights against the operation of a law to which his own debt would be subject.

*Hoag* v. *Hunt*, 21 N. H. 106, was a case similar in principle to *Hall* v. *Boardman*, and was decided the same way and upon the same grounds; it being held that the plaintiff's debt was one that would be discharged by the force and operation of the insolvent law of Massachusetts, if the defendant obtained his discharge there. So in *Smith* v. *Brown*, 43 N. H. 44, we held that the debt, being made and payable by its terms in Massachusetts, was subject to the laws of that State, and would be discharged by the defendant's discharge in insolvency there; and hence that no attachment made on that debt of the insolvent's estate here, should avail against the operation of the assignment in that State. This holding was in accordance with the then recent decisions in this State and in Massachusetts. *Brown* v. *Collins*, 41 N. H. 405; *Whitney* v. *Whiting*, 35 N. H. 471; *Scribner* v. *Fisher*, 2 Gray 43.

But since the decision in the Supreme Court of the United States, in *Baldwin* v. *Hall*, 1 Wallace 223, and of *Bank* v. *Butler*, by this court, 45 N. H. 236, we should, of course, now hold differently, not only in *Brown* v. *Collins*, which is expressly overruled in *Bank* v. *Butler*, but also in *Whitney* v. *Whiting*, and in *Smith* v. *Brown*, as the court in Massachusetts have also overruled *Scribner* v. *Fisher*, and other cases holding the same doctrine, in *Kelley* v. *Drury*, 9 Allen 27. In these cases the general principle is established that the insolvent law of one State can have no effect whatever in any other State, as against citizens of the latter State, holding claims that follow the person of the creditor, no matter where the debt was contracted, or where it was made payable, unless such citizens of such other State voluntarily prove their claims in the State where the law was enacted, and thereby place themselves under the jurisdiction of the law.

And while we should not object, on the principle of comity, as between different States, to allow the assignee of an insolvent in Massachusetts

or any other State, to sue in our courts, in recovering debts due to the insolvent, or in any other way recognize the existence or effect of such a law where the rights of our citizens were not involved, yet when a citizen of this State has a claim against an insolvent of another State, and seeks to enforce the collection of such claim under the laws of this State, upon the property of such insolvent found in this jurisdiction, where such claim would not be discharged or affected by such foreign law, and the creditor has not proved his claim under such law, we should not allow the local law of such other State to have any effect whatever to defeat the claim of our own citizens, under such circumstances.

In the case before us the debt of this plaintiff is not by its terms payable in any particular place, so that it would not come within the principle of *Smith* v. *Brown*, and *Brown* v. *Collins*, and *Whitney* v. *Whiting*, *supra*, if those decisions had not on that point been overruled. The plaintiff was a citizen of this State where his debt was contracted, and still is. His claim is for money, due for the price of goods which plaintiff consigned to defendant, and which he sold for cash. If the claimants had not appeared, a notice might be necessary under sec. 18, ch. 208, Rev. Statutes, but as the claimants appear, all parties will be bound by the judgment.

*Trustee charged.*